Behram V. Parekh (SBN 180361)
bparekh@wisnerbaum.com
**WISNER BAUM LLP**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Telephone 310.207.3233
Facsimile: 310.820.7444

*Counsel for Plaintiffs and all others*
*similarly situated*

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Caroline Levens and Gisell Cordova Regis, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>        v.<br><br>Dexcom, Inc. and Does 1-10,<br><br>                    Defendants. | **CASE NO. 3:25-CV-02565-BJC-BLM**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# **TABLE OF CONTENTS**

Page

I. SUMMARY OF THE CASE ................................................................. 4

II. PARTIES ....................................................................................... 4

III. JURISDICTION AND VENUE ......................................................... 6

IV. STATEMENT OF FACTS ............................................................... 6

    A.    GENERAL ............................................................... 6

    B.    DEFENDANTS AND THEIR WARRANTIES ............................. 11

V.  CLASS ACTION ALLEGATIONS .................................................. 11

VI. CAUSES OF ACTION .................................................................. 14

    Pre-Suit Notices ................................................................... 14

    COUNT I – Plaintiffs and the National Class Against Defendants – Magnuson Moss Warranty Act ........................................................ 14

    COUNT II – Plaintiffs and the National Class Against Defendants – .......... 16

    Breach of Express Warranties ................................................................ 16

    COUNT III – Plaintiffs and Vast Majority of the National Class Against Defendants –  Breach of the UCC Implied Warranty of Merchantability ................................................................... 16

    COUNT IV – California Plaintiffs and the California Subclass Against Defendants – Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ................................................................................ 18

    COUNT V – California Plaintiffs and the California Subclass Against Defendants – Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...................................................................................... 19

    COUNT VI – California Plaintiffs and the California Subclass Against Defendants – Song-Beverly Consumer Warranty Act .................................... 20

    COUNT VII – California Plaintiffs and the California Subclass against Defendants – False Advertising- Cal. Bus. & Prof. Code § 17500 ............... 21

VII. REQUEST FOR RELIEF ................................................................. 21

VIII. DEMAND FOR JURY TRIAL ................................................. 22

On behalf of themselves and all others similarly situated, Plaintiffs Caroline Levens and Gisell Cordova Regis ("Plaintiffs") sue Defendants, Dexcom, Inc. and Does 1-10 ("Defendants") and in support thereof, state as to their own personal knowledge of facts relevant to them personally, and upon information and belief as to the remainder of the allegations, based on publicly available information, the following:

## I.

## SUMMARY OF THE CASE

1.    This lawsuit involves the manufacture, marketing and sale by Defendants of Dexcom G6 and G7 continuous glucose monitors ("G6 and G7" or "Products") that Defendants marketed and advertised to the public as being effective in monitoring consumers' blood glucose levels and warning consumers if their glucose levels were too low or too high.  Defendants represented to consumers that the Products used scientifically proven FDA cleared technology to effectively and accurately measure these levels and provide continuous monitoring of their blood glucose levels.  However, these representations were false, deceptive and inaccurate.  As such, Defendants' actions violated the Magnuson Moss Warranty Act ("MMWA"), breached express warranties made by Defendant, breached implied contractual warranties imposed by law, and Defendants further violated numerous state consumer protection statutes and common laws.  This lawsuit is brought by Plaintiffs on behalf of themselves and the members of the Class and Subclasses to seek redress for these violations and breaches.

## II.

## PARTIES

2.    Plaintiff Caroline Levens is a citizen and resident of Santa Clara County, California.  Plaintiff purchased Dexcom G6 and G7 devices and sensors beginning in 2018 and paid in part or in whole for such devices and sensors. Plaintiffs' insurance company, a third-party payor, also paid in part or in whole for

such devices and sensors.  Prior to purchasing such device and sensors, Plaintiff saw commercials regarding the device wherein she saw representations and warranties regarding the device and sensors.  Plaintiff also visited the Dexcom website, wherein she saw representations and warranties regarding the device and sensors.  Defendants' G6 and G7 devices did not work as advertised and warranted because Plaintiff experienced incorrect readings from the Dexcom G6 and G7 devices and sensors when she would compare them to manually taken blood sugar readings.

3.     Plaintiff Giselle Cordova Regis is a citizen and resident of Riverside County, California.  Plaintiff purchased Dexcom G7 devices and sensors beginning in July 2024 and paid in part or in whole for such devices and sensors.  Plaintiffs' insurance company, a third-party payor, also paid in part or in whole for such devices and sensors.  Prior to purchasing such device and sensors, Plaintiff saw commercials regarding the device wherein she saw representations and warranties regarding the device and sensors.  Plaintiff also visited the Dexcom website, wherein she saw representations and warranties regarding the device and sensors. Defendants' G7 device did not work as advertised and warranted because Plaintiff experienced incorrect readings from the Dexcom G7 device and sensors when she would compare them to manually taken blood sugar readings.

4.     Defendant, Dexcom, Inc., according to its latest Form 8-K filed with the Securities and Exchange Commission, is a Delaware corporation with its principal place of business at 6340 Sequence Drive, San Diego, California 92121. Dexcom, Inc. does business in California and throughout the United States.

5.     Plaintiffs do not know the true names or capacities of the persons or entities sued herein as DOES l-10, inclusive, and therefore sues such Defendants by fictitious names.  Plaintiffs Caroline Levens and Gisell Cordova Regis ("California Plaintiffs") are informed and believe, and upon such information and belief allege, that each of the DOE Defendants is in some manner legally

responsible for the damages suffered by Plaintiffs and the members of the class as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

### III.

### JURISDICTION AND VENUE

14.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(d)(2) (the Class Action Fairness Act), as the individual Plaintiffs are citizens of California and the other members of the putative Class are citizens of all of the other United States, which renders the majority of class member diverse from the Defendants, the putative Class comprises of greater than 100 persons, and the aggregate amount in controversy exceeds the jurisdictional amount of $5,000,000.

15.    Venue is appropriate in this District because Defendant Dexcom, Inc. is a resident of the District, because the acts and occurrences that are the subject matter of their claims and of many other Class members occurred in whole or substantial part in the District, and Defendant Dexcom, Inc. extensively sold Dexcom branded goods within the District.

16.    This Court has personal jurisdiction over Defendant Dexcom, Inc. because Dexcom is headquartered in San Diego, California.

### IV.

### STATEMENT OF FACTS

### A. *GENERAL*

17.    This is a consumer class action lawsuit brought pursuant to Federal Rules of Civil Procedure 23(a) and (b).

18.    Defendants are designers, manufacturers, and sellers of, amongst other products, continuous glucose monitoring devices ("CGM").

19.    CGMs are used by consumers to monitor their blood glucose on a continuous basis.

20.    Dexcom's G6 CGM was cleared by the FDA in March 2018, and first available in the United States market in June 2018.

21.    Dexcom's G7 CGM was cleared by the FDA in December 2022, and first available in the United States market in February 2023.

22.    Dexcom markets its G6 CGM claiming that:

The Dexcom G6 Continuous Glucose Monitoring (CGM) System sends real-time glucose readings automatically to a compatible smart device or Dexcom receiver. No fingersticks, no scanning. It is proven to lower A1C, and features a 10-day sensor that is easy to use.

23.    In a press release issued on December 8, 2022 announcing the FDA's clearance of the G7, Dexcom claimed:

With an overall MARD of 8.2%, Dexcom G7 is the most accurate CGM cleared by the FDA, building on the trusted performance of Dexcom CGM, which is clinically proven to lower A1C, reduce hyper- and hypoglycemia and increase time in range.

24.    Dexcom further claimed in the same press release:

The system features a predictive low alert that provides a 20-minute advance warning of potentially dangerous low glucose levels so users can act quickly to avoid a hypoglycemic event. This critical feature continues to be at the forefront of the Dexcom experience, with more than 52 million Urgent Low Soon alerts acknowledged – more than 11 million of those in the middle of the night.

25.    Dexcom marketing information on its website, during the relevant time frame, claimed the following about the G7:

The Dexcom G7 Continuous Glucose Monitoring (CGM) System is powerful, easy to use,1 and made to work for you. CGM is a way to track your glucose 24/7 using a wearable sensor. Dexcom CGM Systems send your glucose numbers to a smart device or handheld

receiver in real time, without the hassle of fingersticks or scanning. Having easy access to real-time CGM data helps you make better food, activity, and medication decisions in the moment so you can better manage your glucose and achieve results like lower A1C and more time in range.

26.    Dexcom's marketing information on its website during the relevant time frame further claimed, under the heading "Dexcom G7 offers industry-leading accuracy":

One way CGM accuracy is measured is by MARD (mean absolute relative difference). The smaller the MARD number, the higher the accuracy. With a MARD of 8.2%, Dexcom G7 is the most accurate CGM system available.

The more accurate your CGM readings, the clearer the picture you get of what's happening in your body. Having accurate readings is extremely important when you depend on readings to make diabetes management decisions. Dexcom G7 is highly accurate when your glucose is low or high, and when it's changing quickly,[11] giving you the confidence to make decisions when it's most important.

27.    However, in an FDA Warning Letter sent to Dexcom on March 4, 2025, the FDA told Dexcom that a change in the material used to make part of the G6 and G7 sensors was made without the appropriate pre-market clearance required by the FDA and resulted in the G6 and G7 sensors made with that material to be adulterated.

28.    Further, the change in materials caused the G6 and G7 sensors to have considerably greater variability than the readings from the sensors made with the approved material and resulted in higher risks for consumers who used the sensors made with the new material.

29.    In relevant part, the FDA Warning Letter dated March 4, 2025 stated

8

the following (redaction of terms replaced with "(b)(4)" in original):

> Our inspection revealed that the G6 and G7 Continuous Glucose Monitoring Systems are adulterated under section 501(f) (1)(8) of the Act, 21 U.S.C. § 351(f)(1)(8), because your firm does not have approved applications for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or approved applications for an investigational device exemption under section 520(9) of the Act, 21 U.S.C. § 360j(g). The devices are also misbranded under section 502(0) the Act, 21 U.S.C. § 352(0), because your firm introduced or delivered for introduction into interstate commerce for commercial distribution these devices with major changes or modifications to the devices without submitting a new premarket notification to FDA, as required by section 510(k) of the Act, 21 U.S.C. § 360(k), and 21 CFR 807.81(a)(3). Specifically, your firm modified the G6 and G7 sensors by replacing the (b)(4) with (b)(4) used in the (b)(4). The G6 device was originally cleared under K182041 and the G7 device was originally cleared under K213919. The pivotal clinical studies submitted in the original 510(k) submissions for these devices used exclusively (b)(4) sensors. The (b)(4) is a critical component in G6 and G7 sensors. Your firm also conducted two clinical studies which demonstrated that performance of sensors constructed with (b)(4) had significantly greater variability than that of sensors constructed with (b)(4). Additionally, as discussed in item 4 above, your December 3, 2024, response includes the Sensor Level Performance Equivalency of (b)(4) and (b)(4), which shows a significant difference in the standard deviation (SD) of glucose sensitivities between sensors built with (b)(4) and (b)(4). This difference in SD indicates greater clinical performance variation for

sensors with (b)(4). The larger inaccuracies in (b)(4)-coated sensors cause higher risks for users who rely on the sensors to dose insulin or make other diabetes treatment decisions. Therefore, we do not agree your firm has shown equivalency between (b)(4) and (b)(4) to justify that such a change does not require a new premarket submission. The variability differences could significantly affect the safety or effectiveness of the device within the meaning of 21 CFR 807.81(a)(3). Accordingly, your firm was required to submit a new premarket notification submission under section 510(k) of the Act, 21 U.S.C. § 360(k), to FDA at least 90 days before you proposed to begin the introduction or delivery for introduction into interstate commerce for commercial distribution of the modified G6 and G7 sensors. Additionally, your response commits to ceasing distribution of the G7 sensors with (b)(4) until additional testing is completed; however, it does not address the G6 sensors with (b)(4). Your response also does not commit to submitting a new premarket submission for the change to (b)(4) for either the G6 or G7 devices.

30.    By selling these adulterated G6 and G7 devices to Plaintiffs and the putative class, Defendants sold them a product that should not have been available for sale in the market as an FDA cleared device, which was inferior in quality to the product as warranted, advertised and marketed by Defendants, and which did not perform as warranted, advertised, marketed by Defendants.

31.    In other words, Plaintiffs and Class members did not get the benefit of their bargains. Plaintiffs and Class members were misled into purchasing Products that did not meet their expectations. The Products are not as valuable as the prices Plaintiffs and Class members paid for them.

32.    Therefore, Plaintiffs and Class members suffered actual damages as a result of Defendants' actions. Plaintiffs and the other Class members seek either

10

full refund of the purchase prices of the Products or recovery of the difference between the prices paid for the Products and the prices that the Products would have commanded in the marketplace if they had been marketed truthfully.

## B. *DEFENDANTS AND THEIR WARRANTIES*

33.    Defendants explicitly warranted in their advertising, packaging, and labeling that their Products were FDA cleared;

34.    Defendants explicitly warranted in their advertising, packaging, and labeling that their Products were capable of providing accurate continuous blood glucose monitoring;

35.    Defendants impliedly warranted, by explicitly stating that their product was FDA cleared, that it was made according to the specifications and processes approved by the FDA;

36.    Defendants impliedly warranted that the Products, as sold, were of the same quality as those cleared by the FDA.

## V.

## CLASS ACTION ALLEGATIONS

37.    Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representatives of the following class (the "Class"):

All residents (individuals, corporations, partnerships and all legal entities) of the United States (the fifty states, the District of Columbia, Puerto Rico and the U.S. Virgin Islands) who, within the applicable statute of limitations purchased a Dexcom G6 and/or G7 continuous glucose monitoring device and/or sensor that was made using sensor materials different than that approved by the FDA.

38. Plaintiffs Caroline Levens and Gisell Cordova Regis also seek to represent a subclass of all Class members who are residents of California and who

purchased the Products primarily for personal, household or family use (the "California Subclass").

39. Excluded from the Class are Defendants as well as the Judge and Magistrate Judge assigned to the matter.

40. The requirements of Fed. R. Civ. P. 23(a) and (b)(3) are met in this case. The Class and the Subclasses are each so numerous that joinder of all members is impracticable. Although discovery will be necessary to establish the exact sizes of the Class and Subclasses, it is likely, based on the nature of Defendants' business, that the Class numbers in the tens of thousands or millions, and that each Subclass numbers in the hundreds or tens of thousands.

41. There are questions of fact and law common to the Class that predominate over any questions affecting only individual members. The common questions include:

      a. Whether Defendants expressly warranted in writing that the Products were FDA approved;

      b. Whether Dexcom expressly warranted in writing that the Products were capable of accurately measuring blood glucose levels on a continuous basis;

      c. Whether Defendants breached these express written warranties;

      d. Whether Defendants breached the implied warranty of merchantability for a particular purpose and/or for its ordinary purpose;

      e. Whether Defendants' breaches of warranties damaged Plaintiffs and the Class; and

      f. The appropriate measure of damages to be received by Plaintiffs and the Class.

42. California Plaintiffs and the members of the California Subclass have questions of fact and law common to them that predominate over any questions

affecting only individual members of the California Subclass.   These common questions include:

    a.  Whether Defendants violated CLRA § 1750, *et seq*.;

    b.  Whether Defendants violated Business and Professions Code § 17200, *et seq*.;

    c.  Whether Defendants violated the Song-Beverly Consumer Warranty Act;

    d.  Whether Defendants violated California Civil Code § 17500, and

    e.  The appropriate measure of damages to be received by Plaintiffs and the California Subclass.

43.  Plaintiffs' claims are typical of the claims of the other members of the Class and of their respective Subclasses because they arise under the same legal theories and out of the same consistent practices of Defendants. Plaintiffs can and will fairly and adequately represent and protect the interests of the Class and their respective Subclasses and have no interests that conflict with the interests of the Class and their respective Subclasses. This is so because:

    a.  All of the questions of law and fact regarding the liability of the Defendants are common to the Class and Subclasses and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of the Defendants to all Class and Subclass members;

    b.  Plaintiffs and their counsel have no interests different from or in conflict with the interests of the other members of the Class and the Subclasses;

    c.  Plaintiffs have retained competent attorneys who are experienced in the conduct of class actions. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary

responsibility to the Class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class

44.     Defendants' actions have affected numerous consumers in a similar way. This class action is superior to any other method for remedying Defendants' actions given that common questions of fact and law predominate and that without the representation provided by Plaintiffs, it is unlikely that any class members would receive legal representation to obtain the remedies specified by relevant statutes and the common law. Class treatment is also superior because no unusual difficulties will be experienced in managing this case as a class action and doing so will limit the great expense and drain on judicial resources associated with thousands of individual claims and suits.

## VI.

## CAUSES OF ACTION

### Pre-Suit Notices

45.     With respect to all causes of action asserted below, on one or more occasions, each Plaintiff has given to Defendants one or more of all pre-suit and pre-claim notices required by law.

### COUNT I – Plaintiffs and the National Class Against Defendants – Magnuson Moss Warranty Act

46.     Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth here verbatim.

47.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

48.     Plaintiffs and all the members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

49.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) & (5).

50.    In connection with their sale of the Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6) via their written advertisements, product labeling and package inserts, which warranted that the Products were FDA approved and were capable of accurately measuring blood glucose levels on a continuous basis.

51.    In connection with their sale of the Products, Defendants gave to all the putative Class Members who purchased one or more of the Products an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. Specifically, Defendants warranted that the Products were fit for their ordinary purpose as continuous glucose monitors, would pass without objection in the trade, and would conform to the promises and affirmations of fact made on their containers or labels.

52.    Defendants are liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1), because the Products failed to comply with their written warranties and the implied warranty of merchantability. Specifically, the Products were not, in fact, manufactured according the specifications approved by the FDA, nor were they capable of accurately and continuously monitoring blood glucose levels. Further, because of this, the Products are not fit for their ordinary use as continuous glucose monitors because they do not in fact continuously and accurately measure blood glucose levels. Further, the Products do not pass without objection in the trade because they are incapable of performing and so do not in fact perform the functions that they were claimed to perform because they do not in fact continuously and accurately measure blood glucose levels.

53.    Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class are entitled to recover the damages caused to them by Defendants' breaches of written and implied warranties, which damages either constitute the full purchase prices of the Products or the difference in value between the Products as warranted and the Products as actually sold. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs

and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Class for and in connection with the commencement and prosecution of this action.

## COUNT II – Plaintiffs and the National Class Against Defendants – Breach of Express Warranties

54.     Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth verbatim.

55.     Defendants' affirmations of fact and promises made to Plaintiffs and the Class regarding the Products and their descriptions of the Products as contained in Defendants' advertisements, product packaging and labeling and package inserts became part of the basis of the bargain between Defendants and Plaintiffs and the Class, thereby creating express warranties that the Products would conform to those affirmations of fact, promises and descriptions as described above  Defendants breached those express warranties because the Products do not perform as warranted.

56.     As a proximate result of Defendants' breaches of express warranties, Plaintiffs and the Class have been damaged either in the full amount of the purchase prices of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

## COUNT III – Plaintiffs and Vast Majority of the National Class Against Defendants – Breach of the UCC Implied Warranty of Merchantability

57.     Plaintiffs and those members of the Class who purchased one or more of the Products directly from Defendants, and those who purchased from franchisees or authorized dealers who reside in non-privity UCC states (states which have abolished, either by statute or case law, the vertical privity requirement

for consumer transactions) for purposes of the implied warranty of merchantability[1] incorporate herein by reference each preceding and succeeding paragraph as if fully set forth verbatim.

58.    Defendants are "merchants" as to the Products within the meaning of the Uniform Commercial Code ("UCC").  Defendants manufactured, distributed and marketed the Products, which are "goods" within the meaning of the UCC. Consequently, it impliedly warranted that the Products were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, and that they would conform to the promises or affirmation of fact made on their containers or labels.

59.    Defendants breached the implied warranties of merchantability because the Products would not pass without objection in the trade, in that they were incapable of performing the functions they were claimed to perform as described above.

60.    Defendants further breached implied warranties of merchantability because the Products were not fit for the ordinary continuous glucose monitoring purposes for which they are used.

61.    Defendants further breached implied warranties of merchantability because the Products did not conform to the promises or affirmations of fact made on their packaging, product labels, and package inserts, as described above

62.    As a proximate result of Defendants' breaches of the implied warranty of merchantability, Plaintiffs and Class members who purchased directly from Defendants or who live in non-privity UCC states for purposes of implied

---

[1] Alaska, Arkansas, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, West Virginia and Wyoming.

warranties of merchantability were damaged either in the amount of the full purchase prices they paid for the Products or the difference in value between the Products as warranted and the Products as actually sold.

**COUNT IV – California Plaintiffs and the California Subclass Against Defendants – Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.**

63.    California Plaintiffs and the California Subclass incorporate herein by reference all preceding and subsequent paragraphs as if fully set forth here verbatim.

64.    In violation of Civil Code section 1750, *et seq*. (the "CLRA"), Defendants have engaged in unfair and deceptive acts and practices in the course of transactions with California Plaintiffs and the California Subclass, and such transactions were intended to and did result in the sales of goods or services to California Plaintiffs and the California Subclass.  California Plaintiffs and the California Subclass members are "consumers" as that term is used in the CLRA because they sought or acquired Defendants' goods and services for personal, family, or household purposes. Defendants' past acts and practices include, but are not limited to:

   a.    Defendants' representations that the Products had characteristics, uses, and benefits that they did not have, in violation of Civil Code § 1770(a)(5) as described above; and

   b.    Defendants' representations that the Products were of a particular standard, quality and grade when they were of another, in violation of Civil Code § 1770(a)(7) as described above.

65.    Defendants' violations of Civil Code § 1770 have proximately caused damage to California Plaintiffs and the other California Subclass members in the amounts of the full purchase price of the Products or, alternatively, in the difference in values between the Products as represented and the Products as actually sold.  At this time, Plaintiffs and the California Subclass do not request award of those

damages, but do request injunctive relief enjoining Defendants from engaging in further deceptive acts and practices in relation to the advertising, promotion, and sale of the Product as well as ordering that Defendants conduct appropriate corrective notification and advertising.

66.    Plaintiffs have notified Defendants in writing, by letter to Defendant's principal place of business as well as their agent for service of process, on September 25, 2025, pursuant to California Civil Code Section 1782, of the particular violations of Civil Code Section 1770 and demanded that Defendants rectify the problems associated with their behavior detailed above, which acts and practices are in violation of Civil Code Section 1770.

67.    In response to Plaintiffs' Notice, pursuant to Civil Code Section 1782(b) Defendants have failed to provide an appropriate remedy, or agreed to provide an appropriate remedy within a reasonable period of time, within thirty (30) days of Plaintiffs' notice by failing to take the corrective actions requested to remedy their conduct.

**COUNT V – California Plaintiffs and the California Subclass Against Defendants – Unfair Competition Law, Cal. Bus. & Prof. Code § 17200**

68.    California Plaintiffs and the California Subclass incorporate herein by reference the preceding and subsequent paragraphs as if fully set forth here verbatim.

69.    In violation of California Business and Professions Code § 17200, *et seq.*, Defendants' conduct in this regard has been unfair, unlawful and fraudulent.

70.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the UCL and, as a result, California Plaintiffs and the California Subclass have suffered injury-in-fact and have lost money and or property.

71.    Defendants' business acts and practices are unlawful, in part, because they violate California Business and Professions Code § 17500, *et seq.*, which

prohibits false advertising. Defendants engaged in false advertising by making untrue and misleading statements relating to the Products, as detailed in Section IV(C) above, including those made in the infomercials and commercials, and written advertising.

72.    Defendants' business acts and practices are also unlawful in that they violate the California Consumer Legal Remedies Act.  Defendants are therefore in violation of the "unlawful" prong of the UCL.

73.    Defendants' acts and practices were fraudulent within the meaning of the UCL because they were likely to mislead the members of the public to whom they were directed because in advertisements, marketing materials, and product labeling and packaging, Defendants claimed that the Products had properties and benefits they did not have, as detailed above.

74.    California Plaintiffs and the California Subclass have suffered injury as a proximate result of Defendants' actions and seek restitution in the full amount of the purchase prices of the Products or, alternatively, the difference in value between the Products as represented and the Products as sold.

### COUNT VI – California Plaintiffs and the California Subclass Against Defendants – Song-Beverly Consumer Warranty Act

75.    California Plaintiffs and the California Subclass incorporate herein by reference each preceding and succeeding paragraph as if fully set forth here verbatim.

76.    California Plaintiffs and the members of the California Subclass are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

77.    Defendants' Products are "consumer goods" within the meaning of Section 1791(a) of the California Civil Code.

78.    Defendants are "manufacturers" of the Products pursuant to Section 1791(j) of the California Civil Code.

79.    As set forth in more detail above, Defendants breached both express and implied warranties given to California Plaintiffs and the California Subclass. Such breaches proximately caused damages to California Plaintiffs and the California Subclass in the full amount of the purchase prices of the Products or, alternatively, the difference in value between the Products as warranted and the Products as sold.   In addition, pursuant to California Civil Code § 1794(d), California Plaintiffs and the California Subclass are entitled to recover a sum equal to the aggregate amount of their costs and expenses, including attorneys' fees based on actual time expended, determined by the Court to be reasonably incurred by them in connection with their commencement and prosecution of this action.

**COUNT VII – California Plaintiffs and the California Subclass against Defendants – False Advertising- Cal. Bus. & Prof. Code § 17500**

80.    California Plaintiffs and the California Subclass incorporate herein by reference the preceding and subsequent paragraphs as if fully set forth here verbatim.

81.    Defendants' acts and practices were false and/or misleading within the meaning of the Section 17500 because they were likely to mislead the members of the public to whom they were directed as detailed above.

82.    California Plaintiffs and the California Subclass have suffered injury as a proximate result of Defendants' actions and seek restitution in the full amount of the purchase prices of the Products or, alternatively, the difference in value between the Products as represented and the Products as sold.

**VII.**

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the Class and the Subclasses, request the following relief:

A.    An order certifying that this action is properly brought and may be

maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as Class Representatives for the Class and Subclasses, and that Plaintiffs' counsel be appointed Class Counsel;

C.  An award of restitution and/or disgorgement as against all Defendants;

D.  An award of damages as against all Defendants jointly and severally;

E.  Such civil penalties and additional damages as the law may allow against all Defendants;

E.  Such injunctive relief as the law may allow against all Defendants;

F.  An award of reasonable attorneys' fees and other costs, including costs of Court, against all Defendants;

G.  Pre-judgment and post-judgment interest at the maximum rates permissible at law or in equity against all Defendants; and

H.  As against all Defendants, such other relief at law or equity as the Court may deem just and proper.

## VIII.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims and causes of action in this lawsuit.

Dated: November 4, 2025

Respectfully Submitted,
**WISNER BAUM, LLP**

By:  */s/ Behram V. Parekh*
BEHRAM V. PAREKH
bparekh@wisnerbaum.com
11111 Santa Monica Blvd., Suite 1750
Los Angeles, California 90025
Telephone: 310.207.3233
Facsimile: 310.820.7444

*Counsel for Plaintiffs and all others similarly situated*